**KENWOOD COUNTRY CLUB, Appellant, v. BOARD OF LIQUOR CONTROL et, Appellee.**

Common Pleas Court, Franklin County.

No. 184834.   Decided January 29, 1953.

Isadore Topper, Columbus, for appellant.

C. William O'Neill, Atty. Genl., Brown Pettit, Asst. Atty. Genl., Columbus, for appellee.

## OPINION

By RANDALL, J.

This matter comes before us on appeal of the Kenwood Country Club from a decision and order of the Board of Liquor Control made on the 17th day of March, 1952, rejecting the application of the appellant for a Class D-4 permit. The order upon which the appeal was predicated is as follows:

"This cause came on to be heard on the appeal of the Kenwood Country Club, Kenwood Road, Kenwood, Ohio, from an order rejecting an application for a Class D-4 permit made by the Director of the Department of Liquor Control of the State of Ohio, and the same was submitted upon the affidavits and oral evidence of the appellant and the reports and records of the Department of Liquor Control.

"Whereupon the Board of Liquor Control being fully advised in the premises and upon the consideration thereof finds that said appeal is not well taken and should not be allowed and the Board further finds that the appellant, Kenwood Country Club, is not entitled to a Class D-4 permit.

"It is therefore ordered by the Board of Liquor Control that the order heretofore made by the Director of the Department of Liquor Control, rejecting the application of the appellant for a Class D-4 permit be, and the same is SUSTAINED AND AFFIRMED."

The case was submitted to the Court upon the stipulations of counsel, a copy of which stipulations is as follows:

"STIPULATION NO. 1:

"The Kenwood Country Club, Kenwood Road, Columbiana Township, Hamilton County, Ohio, was organized under the laws of the State of Ohio as a corporation not for profit on November 12, 1929 for golf, social and recreational purposes:

"That the club is still in existence owning and maintaining two 18 hole golf courses and a club house building in the aforesaid township and county;

"That said golf courses, club house, real and personal property is reasonably worth approximately $750,000.00 against which there is an indebtedness of $81,000.00.

"That said club house is equipped to serve at one time approximately six hundred meals and that the present membership of the club consists of five hundred dues paying members.

"STIPULATION NO. 2:

"An initiation fee of $250.00 is required of all new members; that yearly dues of a member is $250.00 per year plus federal tax; that said club is governed by a Board of Trustees consisting of fifteen members elected by the members of the club; that no officer, trustee or member receives any compensation from the club and that all the moneys received from dues are used to operate the club.

"STIPULATION NO. 3:

"The Kenwood Country Club from 1934 to February 1, 1950 was the holder of a Class D-4 permit issued by the Ohio Department of Liquor Control;

"That Class D-4 permit No. 15357 was issued to said Club in May, 1949, and that said permit with approval of the Ohio

Board of Liquor Control was voluntarily surrendered for cancellation without refund of the unexpired permit fee by the Kenwood Country Club February 1, 1950.

"STIPULATION NO. 4:

"As provided by Regulation No. 10 of the Ohio Board of Liquor Control under Federal census for 1950 the quota in Hamilton County, Ohio for Class D-4 permits issuable pursuant to §6064-17 GC, is 252 permits. The number of Class D-4 permits issuable in Hamilton County by the Ohio Department of Liquor Control pursuant to Regulation 64 of the Ohio Board of Liquor Control is 29;

"That the Department of Liquor Control, up to the present time has issued in Hamilton County 26 Class D-4 permits.

"STIPULATION NO. 5:

"The quota for Class D-4 permits issuable by the Ohio Department of Liquor Control in Columbiana Township, Hamilton County, in accordance with the provisions of §6064-17 GC, and based on the 1950 Federal Census as provided by Regulation 10, Ohio Board of Liquor Control, is 41 permits;

"That the number of Class D-4 permits issued by the Department of Liquor Control and outstanding April 11, 1949 in Columbiana Township, Hamilton County was three permits;

"That the quota for Class D-4 permits which may be issued by the Ohio Department of Liquor Control in Columbiana Township, Hamilton County, in accordance with Regulation 64 of the Ohio Board of Liquor Control is three permits;

"That there is now issued and outstanding two Class D-4 permits in Columbiana Township, Hamilton County;

"That one Class D-4 permit could be issued by the Ohio Department of Liquor Control in Columbiana Township, Hamilton County under the aforesaid Regulation 64;

"That at the present time there are fewer Class D-4 permits issued and outstanding in Hamilton County and Columbiana Township than were issued and outstanding April 11. 1949 and

"That the Class D-4 permit surrendered February 1, 1950 for cancellation by the Kenwood Country Club for its place on Kenwood Road, Columbiana Township, Hamilton County, has not been issued to any other club since February 1, 1950

"STIPULATION NO. 6:

"That the quota for Class D-4 permits issuable by the Ohio Department of Liquor Control in Hamilton County in accordance with Regulation 64 on April 11, 1949 was 29 Class D-4 permits and that at the present time there are only 26 Class D-4 permits outstanding and in existence in Hamilton County, Ohio."

Appellant in its specifications of error. claims, First, that

the order is unreasonable, unlawful and arbitrary; Secondly, it is contended by appellant that the Board of Liquor Control erred in affirming the order made by the Board of Liquor Control rejecting the application in question; Thirdly, that Regulation No. 64 of the Board of Liquor Control under which the permit was denied, is discriminatory and unlawful and in violation of §6064-3 (h) GC and **Section 1 of Article I of the Constitution of Ohio;** Fourthly, that said Regulation 64 violates **Sections 1 and 26 of Article II of the Constitution of Ohio.**

It will be noted that in accordance with Stipulation No. 1, it was agreed by the appellant and the appellee that the applicant for the permit in question fully qualified for a permit insofar as the requirements of the statute prescribed the qualifications for a D-4 permit, that is, that the appellant was and is a bona fide club eligible to a permit if, under the statutes and the regulations of the Board, one may be issued to it. Consequently we do not have to deal here with the question of abuse of discretion or arbitrary action of the department insofar as the qualification of the appellant to hold such a permit is concerned. The question presented to us is purely one of law and calls for consideration by the Court of the applicable statutes and regulations of the Board in effect at the time the application was made and rejected. We set forth herewith a copy of Regulation No. 64 of the Board of Liquor Control and Regulation No. 11 as follows:

REGULATION NO. 64

**Section I—The number of D-3, D-3A, D-4 and D-5 permits which may be issued within the State of Ohio and within each political subdivision thereof is hereby limited to a figure which shall be equal to the number of permits of each above designated class respectively issued and outstanding in the State of Ohio and in each political subdivision thereof as of April 11, 1949, and during the effective period of this regulation no application for such permits shall be accepted by the Department for filing.**

**No new D-3, D-3A, D-4 and D-5 permits shall be issued except permits issued pursuant to the provisions of Regulation 14, and except, also, new permits issued upon the expiration of any existing permits to the same permit holder for the same location.**

**Section II**—The provisions of Section 1 herein shall not be applicable to the following political subdivisions or districts:—

Rock Creek situated in Ashtabula County

Yorkshire situated in Darke County

New Weston situated in Darke County

Precincts one (1) and two (2) of Wauseon situated in Fulton County

Greenfield Township situated in Gallia County
Licking Township situated in Licking County
Huntington Township situated in Ross County
Bloom Township situated in Scioto County
Dunham Township situated in Washington County

**Section III**—This regulation shall not be construed so as to increase the number of permits of the above designated classes permissible under §6064-17 GC and Regulation 10.

**Section IV**—If this regulation is protested and an appeal is taken to court prior to the effective date of this regulation then and in that event Regulation 70 shall not be repealed and Regulation 1 shall be of no force and effect in repealing Regulation 70.

### REGULATION NO. 11

When in any county, city or village the quota for Class D-3, D-4, or D-5 permits shall have been filled, the department shall notify the applicant that such quota is filled and return to the applicant the permit fee upon request of the applicant, providing such request include an authorization to cancel and withdraw the application. **Upon the cancellation, revocation or surrender of any permit or failure of a person holding a permit to reapply for another permit of the same class in such quota-filled location, applications shall then be processed in the order in which same were filed and pending by the department until the quota is again filled.**

Upon expiration of a permit, however, preference shall be accorded to the holder of the expiring permit. (Emphasis ours.)

Apparently the application for the permit in question was rejected because of the provisions of the second paragraph of Section I of Regulation No. 64, which provides that no new D-3, D-3a and D-5 permits shall be issued, except permits issued pursuant to the provisions of Regulation 14 and except also any permits issued upon the expiration of any existing permits with the same permit holder for the same location.

It will be noted that both Regulation No. 11 and Regulation No. 64 deal with D-3, D-4 and D-5 permits. It would also appear that Regulations 1 to 66 inclusive of the Rules of the Board of Liquor Control were reenacted at the same time on the 24th day of June 1950 and that all regulations theretofore existing were at said time repealed. We proceed upon the theory that Regulation 64, with the exception of the provision of Section I thereof which provides that during the effective period of said regulation no application for such permits shall be accepted by the department for filing, which provision has been declared to be invalid by the Supreme Court, are valid.

In the case of **Board of Liquor Control v. Tsantles, 156 Oh St p. 512,** the Supreme Court of Ohio in a per curiam opinion in reversing the Court of Appeals of this county, referring to par. 2 of Section I of Regulation 64, said

"The lower courts held the foregoing provision of regulation 64 invalid on the theory that it seems to recognize a property right in such permits and also places control of the issuance of further permits in present holders rather than in the Department of Liquor Control.

"This court does not so view this regulation. A permit is issued as a mere privilege and not as a matter of right, and its issuance is in control of the department. Likewise, the transfer of an existing permit from one place to another or from one person to another requires the approval of the department and is not dependent alone on the willingness or desire of the holder of the permit.

"The lower courts were in error in holding this provision of regulation 64 invalid."

In the same case this court in Case No. 180,518 upheld the validity of Section 1, par. 1 of Rule 64, finding it to be reasonable and lawful. We, therefore, proceed to consider whether or not under the regulations of the Board of Liquor Control and the statutes of the State of Ohio, the Board of Liquor Control was in error in sustaining the rejection of the permit in question by the Department of Liquor Control.

Since rules validly enacted and properly promulgated by the Board have the effect of statutes, the same rules of construction which apply to the interpretation of statutes enacted by the Legislature, should apply. It is a well established principle of law that where an ambiguity exists, either because of doubt as to the meaning of the apparent inconsistency in parts of statutes enacted at the same time, the Court, in interpreting the meaning of the statute may consider the enactment as a whole and apply certain well established rules of construction in determining the meaning of certain sections of the statute in an attempt to harmonize the various parts of the enactment. We quote from 37 **O. Jur. p. 620** as follows:

"Sec. 342. Harmonizing Statutes and Parts of Statutes.—In General, Consistency in statutes is of prime importance, and it is the duty of the court to attempt to harmonize and reconcile laws. That is, a statute or section should, if possible, be so construed as to harmonize and reconcile its provisions with other laws, or sections so that all of them may stand. Accordingly, the rule is that all laws newly enacted by the general assembly must be presumed to harmonize with existing statutes on kindred subjects neither expressly nor impliedly repealed. Moreover, a construction of a statute which

destroys the consistency thereof is to be avoided. The statute should, if possible, be so construed that its different parts are in harmony so as to render it a consistent and harmonious whole in subserviency to a common policy. These rules are based upon the presumption, or inference, that the legislature intended to be consistent and harmonious in the making of laws. This would be especially true where the statutes become effective on the same date or where the legislature declares in the title of an act that its purpose and intent is to harmonize the laws relating to the subject."

We quote further from **37 O. Jur. p. 623:**

"Sec. 343.—Limitations and Restrictions.—The only basis for considering the question of reconciliation of statutes would be an ambiguity of law, and the doctrine cannot apply where there is no such ambiguity. Where the case at bar does not raise the question of two inconsistent statutes, the doctrine of reconciling them has no application."

It is the duty of the Court in construing the statute if possible to give effect to all sections of the statutory enactment and to avoid a construction which would render any part of the statute inoperative or meaningless. We quote from **37 O. Jur. p. 617,** as follows:

"Sec. 341. Giving effect to all Statutes or Sections. It may be presumed to have been the intention of the legislature that all its enactments, which are not repealed, should be given effect. Accordingly, all statutory provisions should be so construed, if possible, as to give full force and effect to each and all of them, and not to abrogate, defeat or nullify one by the interpretation of another, where that can be done by a reasonable construction of both. Accordingly, a construction should be avoided, which would render a part of the statutory law inoperative, meaningless, nugatory, purposeless, unnecessary, or useless, unless such a construction is manifestly required."

It is another well established rule of construction that sections and acts in pari materia should be construed together as if they were a single statute. We quote from **37 O. Jur. p. 591,** as follows:

"Sec. 331. Contemporaneous Statutes and Sections—In General. The general assembly, in enacting a statute, is assumed, or presumed, to have legislated with full knowledge and in the light of all statutory provisions concerning the subject-matter of the act, because the legislative mind, in the enactment of a statute, is directed to what has been enacted and exists as a part of the statutory law of the state on the same subject, or subjects related to it. It is therefore a fundamental rule of statutory construction that sections

and acts in pari materia should be construed together as if they were a single statute. All correlated parts of a statute should be construed together. Reasons for these rules are that such statutes are considered as acting upon one system and as having a common object, policy, and spirit. This is especially true in regard to a code of statutes relating to one subject, which may be inferred, and even presumed, to be governed by one spirit and policy. Without these rules there would be neither system nor harmony in the statutes, and their construction would, in most cases, be a mere matter of arbitrary guessing. However, a statute separate and apart from, and not in pari materia with, other acts is to be construed in its own light."

We also quote from 37 O. Jur. p. 599, which defines what statutes or sections of statutes may be regarded as in pari materia as follows:

"Sec. 332. Statutes Regarded as in Pari Materia. Statutes or sections which expressly refer to each other or which relate to the same person or thing or to the same class of persons or things or to the same subject or object may be regarded as in pari materia. Sections have been considered in pari materia which are parts of the same law or act or which were formerly parts of one section or of the same original statute. Although sections of the same chapter of the Code have been regarded as in pari materia, the fact that they are found in different chapters of the Code does not prevent them from being in pari materia. They may be in pari materia even though they contain no references to each other, whether enacted concurrently, or at the same session of the legislature, or at different times. However, the fact that two statutes were enacted at different times is an element helpful to the conclusion that the statutes are not in pari materia. On the other hand statutes are not in pari materia which do not relate to the same subject and which have no common purpose and scope. There is no occasion for resorting to the rule of construction as to statutes in pari materia where the two statutes are entirely independent of each other, or where the two laws provide for entirely different systems to regulate a particular evil, or where the cases to which the two statutes apply are different in their nature. Thus, where two statutes are distinct in purpose, employ different remedies, and provide different penalties for offenses committed, they should not be so construed in pari materia as to employ the remedies of one for the prosecution of the other."

In the instant case, both Regulation 11 and Regulation 64 deal with the subject matter of quotas and each of them also

deals with the same types of permits, to-wit: D-3, D-4 and D-5 permits. However, there is an apparent inconsistency between the provision of Regulation 11 which provides that upon the surrender of a permit, applications shall be processed in the order in which they were filed until the quota is again filled and the provisions of Regulation 64 which provides that no new D-3, D-4 and D-5 permits shall be issued except permits issued pursuant to Regulation 14 and except also new permits issued upon the expiration of any permits to the same permit holder for the same location. Consequently, the Court is called upon to construe the second paragraph of Section 1 of Regulation 64 in the light of the principles of construction above referred to so that if possible, Regulation 11 and Regulation 64 may be harmonized and effect given to each.

The provisions of Regulation 11 with reference to the processing of applications where a permit has been surrendered until the quota is again filled, seem to be mandatory in character. This provision deals with a specific situation which arises where the maximum quota has not been filled because of the surrender of a permit and in our opinion, would apply to a situation where the quota mentioned in Section 1 of Regulation 64 is involved, as well as to the statutory census quota. This regulation provides that applications shall be processed until the quota is again filled in a particular subdivision following the surrender of a permit. By the enactment of Section 1 of Regulation 64, the Board has exercised its statutory authority to limit the number of new permits regardless of the maximum number possible under the statutory census quota. Section 1 of Regulation 64 provides in substance that the number of D-4 permits which may be issued within the State of Ohio and within each political subdivision thereof, shall be limited to a figure which shall be equal to the number of such permits issued and outstanding in each political subdivision as of April 11, 1949. This language bears the implication that while the number of permits in each subdivision shall not exceed the number issued as of April 11, 1949, new permits may be issued up to this limitation. Regulation 64 providing that no new permits shall be issued, with certain exceptions, while unambiguous in the language employed, appears to be in conflict with the first part of the regulation which establishes the policy of the Board fixing a quota as the number of permits issued and outstanding as of April 11, 1949. When we consider Regulation 11 above referred to the apparent intention of the Board in adopting the second paragraph of Section 1 of Regulation 64 is indicated. Regulation 11 has to do with quotas and the language of the section is broad enough to comprehend quotas estab-

336

lished by the Board pursuant to its statutory authority in §6064-3 (h) GC, as well as statutory census quotas. There is nothing in Regulation 11 which indicates that it applies only to the statutory census quota. Since Regulation 64 in its entirety is not clear in view of the apparent conflict between the first and second sections thereof, the clear and unambiguous provision in Regulation 11 must be considered in determining its intent and scope. There is no indication in Regulation 11 that the Board intended to limit permits in a subdivision to a number less than issued and outstanding on April 11, 1949.

Under the stipulation of facts but two permits are now outstanding in Columbiana Township, Hamilton County, which number is less than the statutory census quota for said township and county and also less than the quota provided for in the first paragraph of Regulation 64. Under these circumstances, it is our opinion that the Board acted unlawfully and unreasonably in rejecting the application of the appellant.

The decision of the Board of Liquor Control will be reversed and this cause will be remanded to the Department of Liquor Control for further action.