OHIO EDISON COMPANY, APPELLANT, *v.* POWER SITING
COMMISSION OF OHIO, APPELLEE.

(No. 78-41—Decided December 6, 1978.)

*Mr. Thomas A. Kayuka,* for appellant.

*Mr. William J. Brown,* attorney general, *Ms. Colleen K. Nissl* and *Mr. Andrew C. Meko,* for appellee.

WILLIAM B. BROWN, J. Two issues are raised by the instant cause. The first is whether, under R. C. 4906.10(A)(3), the commission may deny a Certificate of Environmental Compatibility and Public Need solely on the grounds that the utility's expansion plans will have a greater than minimum adverse impact on recreational facilities. The second is whether, in the instant cause, the commission's order, promulgated pursuant to Rule 4906-15-05(F)(2), Ohio Adm. Code, impairs the obligation of contracts and deprives appellant of property without due process of law.

I.

In its first proposition of law, appellant argues that the Power Siting Commission cannot withhold a certificate, pursuant to R. C. 4906.10(A)(3), solely on the basis of evidence that the utility's expansion plans will cause a greater than minimum adverse recreational impact, because recreational impact is a criteria to be considered, if at all, only when the commission determines, pursuant to R. C. 4906.10(A)(6), whether the proposed utility will serve the public interest, convenience, and necessity.

We are not persuaded by appellant's argument. Rule

4906-15-05(F)(2) of the Ohio Adm. Code requires the utility applying for a certificate to identify and estimate the impact of a proposed facility upon "existing and potential recreation areas." Implicit in that requirement is that the commission will study that impact before it grants a Certificate of Environmental Compatibility and Public Need. Thus, if that rule is valid, recreational impact is a criterion which will be considered at some point before the commission issues or denies a certificate pursuant to R. C. 4906.10(A).

Rule 4906-15-05(F)(2) is a valid rule. The commission clearly had the power to promulgate it. (R. C. 4906.03[E].) Moreover, the rule is not "unreasonable or in conflict with statutory enactments covering the same subject matter" (*State, ex rel. DeBoe*, v. *Indus. Comm.* [1954], 161 Ohio St. 67, 69). Rule 4906-15-05(F)(2) does not conflict with statutory enactments covering the same subject matter. The statutory criteria set forth in R. C. Chaper 4906 for denying or granting a certificate are the "environmental impact" of the facility (R. C. 4906.10[A][3]) and the facility's furtherance of "public interest, convenience, and necessity" (R. C. 4906.10[A][6]). While these criteria do not specifically include recreational considerations, they are also sufficiently general[1] that they do not conflict with Rule 4906-15-05(F)(2). In addition, the rule is not unreasonable. By requiring the applicant to identify and estimate, and the commission to consider, the impact of a proposed facility on existing and potential recreation areas

[1]Webster's Third New International Dictionary defines "environment" in the following manner:

"1. something that environs: *surroundings* * * * 2: the surrounding conditions, influences, or forces that influence or modify: as *a*: the whole complex of climatic, edaphic, and biotic factors that act upon an organism or an ecological community and ultimately determine its form and survival * * * *b*: the aggregate of social and cultural conditions (as customs, laws, language, religion, and economic and political organization) that influence the life of an individual or community."

In light of definition 2b, it would be difficult to say that the impact on one's "surroundings" does not include an impact on recreation areas.

before a certificate may be granted, the rule affirms a state policy of providing recreational facilities to the public which began with the dedication of canal lands and feeder reservoirs for such use by the General Assemblies of 1894-1898 and which is now provided for in R. C. Chapters 1501 and 1541. Indeed, the rule affirms that policy at a time when increased per-capita income and mobility and shorter work weeks have multiplied the number of individuals wishing to use recreational facilities.[2] We find, therefore, that recreational impact is a criterion which must be considered at some point before the commission issues or denies a certificate pursuant to R. C. 4906.10(A).

Appellant argues next that Rule 4906-15-05(F)(2) applies only to a determination, pursuant to R. C. 4906.10 (A)(6), that the utility will or will not serve the public interest, convenience, and necessity.

We disagree. The fact that the commission's rule might apply to an R. C. 4906.10(A)(6) determination does not prevent its application to an R. C. 4906.10(A)(3) finding. Rule 4906-15-05(F)(2) requires the utility applying for a certificate to identify existing and potential recreation areas which might be affected by the applicant's expansion plans and to estimate the impact of its proposed expansion on those recreation areas. Nothing within the rule indicates whether the commission should consider the information concerning recreational impact while it makes one or another of the findings required by R. C. 4906.10 (A). However, R. C. 4906.10(A)(3) and 4906.10(A)(6) require the commission to answer different questions—whether and how much the proposed utility will harm the environment and how much it will benefit the public. Since the significance of criteria like recreational impact may vary depending on the question the commission is attempting to answer, the consideration of such a given criterion at one stage of the commission's inquiry does not make its consideration at a second stage irrelevant. Moreover, it is

---

[2]See Comment: Ohio's Park Systems: An Appraisal, **32 Ohio St. L. J. 818.**

established law in Ohio that the General Assembly (or bodies, like the commission, which have been granted legislative power by the General Assembly)[8] "will not be presumed to have intended to enact a law producing unreasonable or absurd consequences," and that "[i]t is the duty of the courts, if the language of a statute fairly permits * * * to construe the statute as to avoid such a result." *Canton* v. *Imperial Bowling Lanes* (1968), 16 Ohio St. 2d 47, paragraph four of the syllabus, following *State, ex rel. Cooper,* v. *Savord* (1950), 153 Ohio St. 367. If this court were to accept the argument that the commission may consider certain criteria like recreational impact only once when it makes the several findings mandated by R. C. 4906.10(A), it would have to violate that established law. We find, therefore, that the commission had the right to consider whether appellant's expansion plans represented the minimum adverse recreational impact when it determined the utility's adverse environmental impact pursuant to R. C. 4906.10(A)(3).

Having found that the commission properly considered evidence concerning the adverse recreational impact of appellant's proposed expansion when it made its R. C. 4906.10(A)(3) determination, it is necessary for us to determine whether the commission erred when it withheld the certificate on the basis of that evidence.

Pursuant to R. C. 4906.12 and 4903.13, this court will not reverse a determination of the Power Siting Commission of Ohio on the grounds that it is against the weight of the evidence, unless that determination is unreasonable. *Chester Twp.* v. *Power Siting Comm.* (1977), 49 Ohio St. 2d 231. In view of the evidence that the utility's construction of a new transmission line along the centerline of its easement over the golf course would effectively turn an

---

[8] Administrative rules which have the effect of legislative enactments are subject to the ordinary rules of statutory construction. *State, ex rel. Miller Plumbing Co.,* v. *Indus. Comm.* (1948), 149 Ohio St. 493, 496-497; *Kenwood Country Club* v. *Bd. of Liquor Control* (1953), 68 Ohio Law Abs. 326, 332, affirmed 68 Ohio Law Abs. 336.

already crowded; public, eighteen-hole facility serving expanding urban areas into a nine-hole course, we do not find the commission's determination to be unreasonable or unlawful. Appellant's first proposition of law is, therefore, overruled.

## II.

Appellant contends further that the commission's determination, which limits appellant's use of an easement granted it by Bath Golf Course several years ago, violates Ohio and federal constitutional safeguards against the impairment of contracts and the taking of property without due process of law.

Section 10, Article I of the United States Constitution and Section 28, Article II of the Ohio Constitution, protect against state impairment of contracts, and the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution, protect against state taking of property without due process of law.[1] The protection provided by these constitutional safeguards is not, however, absolute. The provisions against impairment of contracts and taking of property without due process of law must bow to valid police power legislation designed to protect public health, safety and welfare

---

[1] The federal constitutional provision against the impairment of contracts, Section 10, Article I, reads, in pertinent part:

"No state shall * * * pass any Bill of Attainder, ex post facto Law, or Law impairing the obligation of Contracts * * *."

Its Ohio constitutional counterpart, Section 28 of Article II, provides, in pertinent part:

"The General Assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts * * *."

The Fourteenth Amendment to the United States Constitution provides, in pertinent part:

"No State shall * * * deprive any person of life, liberty, or property, without due process of law * * *."

Section 16, Article I of the Ohio Constitution, reads, in pertinent part:

"All courts shall be open, and every person, for an injury done him in his land, goods, person or reputation, shall have remedy by due course of law * * *."

*(Akron* v. *Pub. Util. Comm.* [1948], 149 Ohio St. 347, paragraph four of the syllabus; *New York & New Eng. Co.* v. *Bristol* [1894], 151 U. S. 556, 567), as long as the exercise of that police power "bears a real and substantial relation to the public health, safety, morals or general welfare of the public and if it is not unreasonable or arbitrary" *(Benjamin* v. *Columbus* [1957], 167 Ohio St. 103, paragraph five of the syllabus; see, also, *Pennsylvania Coal Co.* v. *Mahon* [1922], 260 U. S. 393). Moreover, while the courts may be called upon to weigh public benefit against private burdens and determine whether given legislation constitutes a valid exercise of police power *(Direct Plumbing Supply Co.* v. *Dayton* [1941], 138 Ohio St. 540, 546-547), they will not invalidate that legislation unless the legislating body's initial determination that the law bears a real and substantial relationship to public health, safety and welfare appears to be clearly erroneous *(Benjamin, supra,* paragraph six of the syllabus).

We do not find the commission's initial determination that recreational impact bears a real and substantial relationship to public health, safety and welfare to be clearly erroneous. Unlike ordinances limiting grocery store or barber shop hours *(Olds* v. *Klotz* [1936], 131 Ohio St. 447; *Cincinnati* v. *Cornell* [1943], 141 Ohio St. 535), a rule requiring the applicant to identify and estimate, and the commission to consider, the impact of a utility's expansion on existing and potential recreation areas does more good to the public than harm to the individual. Under Rule 4906-05-15(F)(2) and R. C. 4906.10(A)(3), the commission must determine merely whether the proposed expansion represents the minimum adverse recreational impact, not whether it represents any adverse impact at all. (Under the facts of the instant cause, the fact that the commission considered minimum adverse impact led it to restrict the utility's use of unused portions of the easement, but not to prohibit the utility from building its new power line along the route the older one had taken even though evidence revealed that any power line additions along the

easement would have some environmental impact.) Moreover, in light of the long-standing state policy to provide recreational facilities and the growing demand for such facilities, as discussed, *supra,* in answer to appellant's first proposition of law, we find that Rule 4906-05-15(F)(2) and R. C. 4906.10(A)(3) substantially benefit the public. This court therefore holds that the commission's order, pursuant to Rule 4906-05-15(F)(2) and R. C. 4906.10(A)(3), constitutes a valid exercise of police power and finds appellant's constitutional objections to it to be without merit.[5]

The order of the commission being neither unreasonable nor unlawful is affirmed.

*Order affirmed.*

CELEBREZZE, SWEENEY and LOCHER, JJ., concur.
LEACH, C. J., HERBERT and P. BROWN, JJ., dissent.

PAUL W. BROWN, J., dissenting. The facts of this case include a private agreement of easement between the Ohio Edison Company and the owners of the affected property, the materiality of which cannot be denied. There is minimum adverse recreational effect upon the private facility herein involved. There is no evidence of such adverse recreational impact as to provide an adequate police power connection justifying the action of the Power Siting Commission denying the required certificate of environmental compatibility. If needed power transmission lines can be prevented or diverted at great expense on such slight evidence as herein involved, that greatly increased expense in

---

[5]Appellant also contends that the commission's determination violates Ohio and federal constitutional prohibitions against retroactive laws. Since R. C. Chapter 4906 and the commission's rules and actions pursuant to it do not purport to change appellant's right to bring or defend actions at law and since the only right of appellant which has been affected concerns the contract right to unrestricted use of its easement which we have determined to be subservient to the state's police power, we find this argument to be without merit.

220

the cost of needed power transmission lines will be passed on to the public. It is my view that such expense must be justified by real and substantial rather than imaginary adverse environmental impact.

LEACH, C. J., and HERBERT, J., concur in the foregoing dissenting opinion.