COLUMBIA GAS OF OHIO, INC., APPELLANT, *v.* PUBLIC UTILITIES
COMMISSION OF OHIO, APPELLEE.

[Cite as Columbia Gas of Ohio, Inc. *v.* Pub. Util. Comm. (1983),
5 Ohio St. 3d 105.]

(No. 82-1339—Decided June 8, 1983.)

*Mr. Thomas E. Morgan, Mr. James L. Fullin* and *Mr. Thomas J. Brown, Jr.,* for appellant.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Mr. Steven H. Feldman,* for appellee.

*Mr. William A. Spratley,* consumers' counsel, and *Mr. David C. Bergmann,* urging affirmance for *amicus curiae,* Office of Consumers' Counsel.

PRYATEL, J. This case presents the issue of whether the commission's determination that Columbia violated the regulations contained in Ohio Adm. Code 4901:1-18-05, regarding the November 24 and December 29, 1980, gas service terminations, is reasonable and lawful.

Pursuant to the authority contained in R.C. 4933.122, and as a result of negotiations with the utilities, the commission has promulgated a comprehensive set of rules governing termination procedures to be followed by gas and electric utility companies. Ohio Adm. Code 4901:1-18-04(A) obligates utilities to make available to customers, whose accounts are delinquent, one of two extended payment plans. Pursuant to Ohio Adm. Code 4901:1-18-04(C), if a customer fails to comply with the terms of an extended payment plan, then

the utility is entitled "* * * to terminate service in accordance with the procedures set forth in Rule 4901:1-18-05 of the Administrative Code."

In the subject cause, Columbia did make several extended payment arrangements available to the Grannons. However, the commission concluded that the aforementioned terminations did not comply with Ohio Adm. Code 4901:1-18-05, which provides, in part:

"(A)  If it is determined that a residential customer is delinquent in rendering payment for service, the company may, after proper and reasonable notice of pending termination of service (not less than fourteen days), terminate the customer's service * * * in compliance with the following conditions:

"* * *

"(2)  The company will provide the appropriate county welfare department with a listing of those customers whose services will be terminated for nonpayment at least twenty-four hours before such action is taken.

"(3)  On the day of termination of service, the company will provide the customer with personal notice, or if no one is at home, written notice to the premises, prior to termination."

Pursuant to Ohio Adm. Code 4901:1-18-05(C)(1), (2) and (3), a termination which occurs from December 1st through February 28th triggers responsibilities *in addition* to the aforementioned duties, including the duties to: (1) make prior contact with the consumer by personal contact, telephone, or hand-delivered written notice; (2) inform the consumer of available sources of federal, state or local aid for payment of utility bills; and (3) offer an alternative, more liberal, extended payment plan.

Based upon the evidence adduced at the hearing, the commission concluded that the November 24, 1980, termination did not comport with the requirements of Rule 4901:1-18-05(A)(2) and (3). Regarding the December termination, the commission held that Columbia again failed to comply with Rule 4901:1-18-05(A)(2) and (3), as well as the additional procedures contained in subsections (C)(1), (2) and (3).

Appellant argues that the record demonstrates that the Grannons received written and personal notices, which satisfy the requirements of Rule 4901:1-18-05, prior to the November termination. Specifically, Columbia argues that the termination was valid since: (1) the Grannons received an extended payment agreement in May 1980, stating that "[u]nless payment is received * * * service will be subject to discontinuance without further notice"; (2) notice was sent to the county welfare department prior to May 1980; and (3) personal notice was received on November 13, 1980, when Columbia's serviceman arrived to terminate service, even though service was not disconnected on that date. In view of the record, the commission's rejection of this argument appears reasonable.

The provisions of Rule 4901:1-18-05(A)(2) mandate that county welfare departments must be provided with a list of customers whose service will be terminated for nonpayment at least twenty-four hours before the service is to

be disconnected. Although Columbia did notify the welfare department in April, May and June 1980 that the Grannons' service would be disconnected, these notices related to previously scheduled shut-offs which did not occur due to the extended payment arrangement executed with the Grannons in May. Moreover, the Director of the Morgan County Welfare Department, Ralph Smith, testified that a review of his welfare records failed to indicate any notice regarding a scheduled termination of service at the Grannon residence for November or December 1980.

The record further supports the commission's determination that Columbia failed to comply with Rule 4901:1-18-05(A)(3). This rule requires the company "[o]n the day of termination" to provide the customer with personal notice of the termination; or in the event the customer is not home, then written notice must be supplied prior to the termination. The serviceman who performed the November disconnection, Howard Bonsell, testified that when he arrived at the residence he knocked on the door and no one was home. He subsequently disconnected the service without leaving any written notice at the premises.

Although Columbia maintains that notice of an impending termination was provided when Mr. Grannon spoke with the serviceman on November 13th, nevertheless, notice was not forwarded to the welfare department or to the Grannons on the day of the termination.

Appellant also argues that the commission's decision constitutes a retroactive application of Rule 4901:1-18-05 to the extended payment agreements. Furthermore, Columbia maintains the commission's decision negates the clause in the extended payment agreements which provided that the customer's failure to effectuate payment would entitle Columbia to terminate service without notice. According to Columbia, the holding impairs the obligation of contracts.

The rules contained in Ohio Adm. Code 4901:1-18-01 *et seq.* became effective March 22, 1980, prior to the extended payment plan offered to the Grannons. The May 1980 payment plan was offered in accordance with Rule 4901:1-18-04(A). Rule 4901:1-18-04(C) specifically provides that a customer's failure to make payment under an extended agreement shall entitle the utility "* * * to terminate service in accordance with the procedures set forth in Rule 4901:1-18-05 * * *." The commission's decision applied rules governing terminations which were in effect at the time Columbia made available the extended payment agreements. The commission's holding merely applies an unambiguous procedure to the terminations; it does not broaden the procedure to an extent which would constitute a retroactive amendment of the rules.

Columbia's assertion that the rules governing terminations impair the obligation of contracts has previously been addressed by this court in *Inland Steel Development Corp.* v. *Pub. Util. Comm.* (1977), 49 Ohio St. 2d 284 [3 O.O.3d 435]. Therein, it was stated, at page 287:

"This court has recognized that individual contracts between a public

utility and its customers may be affected where such action is reasonably necessary to protect the public health, safety and welfare. As stated by this court in paragraph four of the syllabus in *Akron* v. *Pub. Util. Comm., supra* [(1948), 149 Ohio St. 347 (37 O.O. 39)]:

" 'The provisions of the state and federal constitutions, inhibiting laws impairing the obligation of contract, do not affect the power of the state to protect the public health or the public safety. The rights and privileges arising from contract are subject to regulations for the purposes stated in the same sense and to the same extent as is property owned by natural persons or by corporations.' " See, also, *Ohio Edison Co.* v. *Power Siting Comm.* (1978), 56 Ohio St. 2d 212, 218 [10 O.O.3d 371], wherein the court concluded that the protections against the impairment of the obligation of contracts are not absolute and may be subordinate to the state's police powers, where the evidence of that power " 'bears a real and substantial relation to the public health, safety, morals or general welfare * * *.' " Clearly, the subject notice requirements do bear a substantial relation to the health, safety and general welfare of the public.

Thus, the termination procedures in Ohio Adm. Code 4901:1-18-05 supersede a provision in an extended payment agreement which would permit a utility to discontinue gas service to a residential customer "without further notice."

Columbia argues the commission's decision will enable consumers to obtain endless notices, extensions and medical certificates without fear of ever having their gas service terminated for nonpayment. Apparently, appellant has misread the commission's rules, as well as its entry on rehearing, wherein the commission stated:

"* * * The respondent has overlooked the language in Rule 4901:1-18-04(A) which states that the company shall make available an extended payment plan 'to any customer *not currently in default on a previously agreed upon extended payment plan.*' It is evident from this language that the disconnection rules do not provide for a never ending termination process." (Emphasis *sic.*)

Additionally, while Columbia was obligated to offer a second, more liberal, extended payment plan to the Grannons from December 1st through February 28th under Rule 4901:1-18-05(C)(3), that rule specifically provides that upon default service may be terminated after ten-days notice. Therefore, while the disconnection rules may place an added burden upon Columbia, they do not, as has been suggested, provide an *endless* succession of delays before gas service may be terminated.

Regarding the December 29, 1980, termination, appellant argues that adequate notice was provided to the Grannons by virtue of communications with their attorneys. Specifically, appellant maintains that on December 12 and 22, 1980, the Grannons, through negotiations with their attorneys, were informed that further failure to remit payment would result in the termination of gas service.

Assuming, *arguendo,* that notice to an attorney constitutes notice to the client for purposes of Rule 4901:1-18-05(C)(1), see, generally, *American Export & Inland Coal Corp.* v. *Matthew Addy Co.* (1925), 112 Ohio St. 186, paragraph two of the syllabus, appellant's December shut-off failed to comply with Ohio Adm. Code 4901:1-18-05(A)(2), (3) and (C)(2) and (3).

Since the added duties placed upon a utility which desires to terminate residential service from December 1 through February 28 are "in addition to the other requirements" of Rule 4901:1-18-05, appellant was not relieved of its duty to notify the welfare department and to provide personal or written notice at the residence on the day of the termination. Rules 4901:1-18-05(A)(2) and (3). Like the November termination, appellant's December shut-off failed to comply with these rules.

Nor was the obligation of personal service or written notice at the residence satisfied through negotiations with the Grannons' attorneys. To so hold would require the risk that the attorney was unable to reach his client, or unable to relay information in time for the customer or county welfare department to undertake the protection from the danger inherent in living in quarters where the service is shut off, particularly when, as here, there is an ill member in the family.

The record firmly establishes that the serviceman dispatched to terminate service in December was specifically instructed not to have contact with the Grannons. Furthermore, no written notice was left at the residence before or after the termination, nor was notice sent to, or received by, the county welfare department. In addition, Columbia failed to comply with Rule 4901:1-18-05(C)(2) and (3), in that the Grannons were not informed of available sources of governmental aid for the payment of utility bills, nor were they offered the more liberal extended payment plan detailed in Rule 4901:1-18-05(C)(3).

Finally, Columbia asserts that the provisions of Rules 4901:1-18 *et seq.* do not apply to the cause *sub judice* since service was being provided on a "conditional basis." A review of the subject rules, however, fails to reveal any provision authorizing "conditional service." The disconnection rules establish the exclusive procedure for terminating gas service to residential consumers who fail to make timely payment. Unless a utility seeks and obtains from the commission an order waiving compliance with the rules (Ohio Adm. Code 4901:1-18-08), the provisions of Rule 4901:1-18-05 must be followed. Regardless of the label which Columbia chooses to affix to its contracts in this cause, those contracts must comply with the rules governing termination. See *Cleveland* v. *East Ohio Gas Co.* (1929), 34 Ohio App. 97, at 112, 115, appeal dismissed (1930), 121 Ohio St. 628.

Accordingly, the order of the commission being reasonable and lawful is hereby affirmed.

*Order affirmed.*

Celebrezze, C.J., W. Brown, Sweeney, Holmes, C. Brown and J.P. Celebrezze, JJ., concur.

Pryatel, J., of the Eighth Appellate District, sitting for Locher, J.