AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL
EMPLOYEES LOCAL # 74 et al., Appellees,

v.

CITY OF WARREN et al., Appellants.

[Cite as *Am. Federation of State, Cty. & Mun. Emps. Local
# 74 v. Warren,* 177 Ohio App.3d 530, 2008-Ohio-3905.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 2007–T–0110.

Decided Aug. 1, 2008.

Green, Haines, Sgambati Co., L.P.A., and Dennis Haines and Charles W. Oldfield, for appellees.

Gregory V. Hicks, Warren City Law Director, and James R. Ries, Deputy Law Director, for appellants.

Nancy Hardin Rogers, Attorney General, and Sharon A. Jennings and Pearl M. Chin, Assistant Attorneys General, for intervening defendant, State of Ohio.

MARY JANE TRAPP, Judge.

{¶ 1} The city of Warren appeals from a judgment of the Trumbull County Court of Common Pleas finding R.C. 9.481 constitutionally enacted pursuant to

Section 34, Article II, Ohio Constitution and therefore superseding the city's residency requirement, codified in Section 155.05 of the Codified Ordinances of the city of Warren.

{¶ 2} The issue on appeal concerns the constitutionality of R.C. 9.481. After a careful review of the pertinent constitutional provisions, statutes, and case law authority, this court concludes that R.C. 9.481 is constitutionally enacted pursuant to Section 34, Article II, Ohio Constitution, and therefore we affirm the judgment of the trial court.

{¶ 3} Mindful of the presumption of constitutionality afforded the General Assembly's legislative enactments, we have concluded that R.C. 9.481 is a valid exercise of the legislature's broad authority to regulate public employees' right to collectively bargain the terms and conditions of their employment pursuant to Section 34, Article II, Ohio Constitution. We hold that the statute regulates a matter of statewide concern and therefore does not unconstitutionally infringe on the city's home rule powers, and we have also determined that the statute offends neither the Uniformity Clause nor the Contract Clause of the Ohio Constitution.

{¶ 4} We recognize that many economically depressed cities sought to either maintain or regain a stable, economically productive workforce through enactment of residency requirements for their public employees, but if a municipality such as the city of Warren wishes to challenge the wisdom of the General Assembly in enacting R.C. 9.481, its resort is to the political process and not the court.

{¶ 5} *Substantive and Procedural Background*

{¶ 6} The parties in this case are (1) the city of Warren, a municipal corporation organized under the laws of the state of Ohio, and (2) the American Federation of State, County and Municipal Employees, Local # 74, and Warren Management Association ("unions"), two labor organizations representing various employees of Warren.

{¶ 7} On May 29, 1991, Warren City Council passed City Ordinance No. 10262/91, which enacted Section 155.05 of the city's Codified Ordinances. Section 155.05 requires, as a condition of employment, that any person appointed as a nonelected official or employee of the city become a resident of the city and remain a resident throughout his employment.

{¶ 8} On May 1, 2006, the General Assembly enacted R.C. 9.481, which prohibits municipalities from imposing a residency requirement as a condition of employment on their employees. The statute provides:

{¶ 9} "(B)(1) Except as otherwise provided in division (B)(2) of this section, no political subdivision shall require any of its employees, as a condition of employment, to reside in any specific area of the state.

{¶ 10} "(2)(a) Division (B)(1) of this section does not apply to a volunteer.

{¶ 11} "(b) To ensure adequate response times by certain employees of political subdivisions to emergencies or disasters while ensuring that those employees generally are free to reside throughout the state, the electors of any political subdivision may file an initiative petition to submit a local law to the electorate, or the legislative authority of the political subdivision may adopt an ordinance or resolution, that requires any individual employed by that political subdivision, as a condition of employment, to reside either in the county where the political subdivision is located or in any adjacent county in this state. * * *."

{¶ 12} Senate Bill 82, which enacted R.C. 9.481, contains two uncodified sections declaring the legislative intent in the enactment of R.C. 9.481. Section 2 of Senate Bill 82 states:

{¶ 13} "In enacting section 9.481 of the Revised Code in this act, the General Assembly hereby declares its intent to recognize both of the following:

{¶ 14} "(A) The inalienable and fundamental right of an individual to choose where to live pursuant to Section 1 of Article I, Ohio Constitution.

{¶ 15} "(B) Section 34 of Article II, Ohio Constitution, specifies that laws may be passed providing for the comfort, health, safety, and general welfare of all employees, and that no other provision of the Ohio Constitution impairs or limits this power, including Section 3 of Article XVIII, Ohio Constitution."

{¶ 16} Furthermore, Section 3 of Senate Bill 82 states:

{¶ 17} "The General Assembly finds, in enacting section 9.481 of the Revised Code in this act, that it is a matter of statewide concern to generally allow the employees of Ohio's political subdivisions to choose where to live, and that it is necessary to generally prohibit political subdivisions from requiring their employees, as a condition of employment, to reside in any specific area of the state in order to provide for the comfort, health, safety, and general welfare of those public employees."

{¶ 18} Also, in connection with the enactment of R.C. 9.481, the Ohio Legislative Service Commission stated its finding that there are 125 cities and 13 villages throughout the state of Ohio that have some form of residency requirements in their charters. "In some cases these requirements pertain to management employees of the city (city manager, finance director, treasurer, etc.). Many of the larger cities in the state such as Cleveland, Akron, Toledo, Dayton, and Youngstown (by ordinance) have residency requirements for virtually all city employees to live within city limits." [1]

---

1. See Ohio Legislative Service Commission's Fiscal Note and Local Impact Statement of September 15, 2005, relating to Senate Bill 82.

{¶ 19} On June 14, 2006, the unions filed a complaint in the Trumbull County Common Pleas Court against Warren and its mayor, Michael J. O'Brien, seeking a judgment declaring that (1) Section 155.05 of Codified Ordinances of Warren is in conflict with R.C. 9.481; (2) R.C. 9.481 preempts Section 155.05 of the Codified Ordinances of Warren; and (3) Section 155.05 of the Codified Ordinances of Warren is of no force or effect.

{¶ 20} Warren filed an answer and a counterclaim alleging that the enactment of R.C. 9.481 is an infringement of its power pursuant to Section 3, Article XVIII, Ohio Constitution, and also a violation of (1) Section 28, Article II, Ohio Constitution (the Contract Clause), (2) Section 26, Article II, Ohio Constitution (the Uniformity Clause), and (3) the separation of powers.

{¶ 21} On October 23, 2006, the Ohio Attorney General filed a motion to intervene, which the trial court granted. All three parties subsequently filed motions for summary judgment.

{¶ 22} On September 14, 2007, the trial court granted the unions' motion for summary judgment and denied Warren's motion for summary judgment. The trial court found R.C. 9.481 to have been enacted constitutionally pursuant to the authority granted to the General Assembly in Section 34, Article II, Ohio Constitution. Therefore, the trial court struck down Section 155.05 of the Warren Codified Ordinances as having been superseded by R.C. 9.481.

{¶ 23} Warren now appeals, raising four assignments of error for our review.

{¶ 24} "[1.] The trial court erred in concluding that section 9.481 of the Ohio Revised Code was a valid enactment pursuant to Article II, Section 34 of the Ohio Constitution.

{¶ 25} "[2.] The trial court erred in striking down Section 155.05 of the Codified Ordinances of the City of Warren by concluding that Section 155.05 of the Codified Ordinances of the City of Warren was superseded by Section 9.481 of the Ohio Revised Code.

{¶ 26} "[3.] The trial court erred in not finding Section 9.481 of the Ohio Revised Code to be in violation of Article II, Section 26 of the Ohio Constitution.

{¶ 27} "[4.] The trial court erred in not finding Section 9.481 of the Ohio Revised Code to be in violation of Article II, Section 28 of the Ohio Constitution."

{¶ 28} *Standard of Review*

{¶ 29} Summary judgment is appropriate under Civ.R. 56(C) when (1) there is no genuine issue of material fact remaining to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence in favor of the nonmoving party, that conclusion favors the moving party. *Temple*

*v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267. An appellate court reviews a grant of summary judgment de novo. *Comer v. Risko,* 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8.

{¶ 30} Moreover, whether a statute is constitutional is a question of law reviewed de novo by an appellate court. *Wilson v. AC&S, Inc.,* 169 Ohio App.3d 720, 2006-Ohio-6704, 864 N.E.2d 682, ¶ 61.

{¶ 31} *Presumption of Constitutionality*

{¶ 32} We begin our review with the recognition that all statutes have a strong presumption of constitutionality. See *Sorrell v. Thevenir* (1994), 69 Ohio St.3d 415, 418, 633 N.E.2d 504. Before a court may declare unconstitutional an enactment of the legislative branch, " 'it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.' " *Doyle v. Ohio Bur. of Motor Vehicles* (1990), 51 Ohio St.3d 46, 47, 554 N.E.2d 97, quoting *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus. A party raising a facial challenge, as Warren does in the instant appeal, must demonstrate that there is no set of circumstances in which the statute would be valid. *Harrold v. Collier,* 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶ 37. Courts have a duty to liberally construe statutes to avoid constitutional infirmities. *Hughes v. Registrar, Ohio BMV* (1997), 79 Ohio St.3d 305, 307, 681 N.E.2d 430.

{¶ 33} With those considerations in mind, we begin our analysis of the constitutionality of R.C. 9.481. The General Assembly has declared that it enacted R.C. 9.481 pursuant to the power conferred by Section 34, Article II, Ohio Constitution. That constitutional provision states:

{¶ 34} "Laws may be passed fixing and regulating the hours of labor, establishing a minimum wage, and providing for the comfort, health, safety and general welfare of all employees; and no other provision of the constitution shall impair or limit this power."

{¶ 35} On the other hand, Section 155.05 of the Warren Codified Ordinances was enacted purportedly pursuant to Section 3, Article XVIII, Ohio Constitution (the "Home Rule Amendment"), which provides:

{¶ 36} "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

{¶ 37} *Whether R.C. 9.481 was Validly Enacted Pursuant to Section 34, Article II, Ohio Constitution*

{¶ 38} In the first assignment of error, Warren claims that the enactment of R.C. 9.481 is not a proper exercise of the authority granted in Section 34, Article

II, Ohio Constitution, but rather an unconstitutional infringement of Warren's home-rule power. The unions contend that the statute was properly enacted pursuant to the broad grant of authority conferred by Section 34, Article II, Ohio Constitution, and therefore supersedes Warren's residency requirement codified in Section 155.05 of its Codified Ordinances.

{¶ 39} Because of the supremacy clause in Section 34, Article II, Ohio Constitution, if R.C. 9.481 is a valid exercise of the legislature's power conferred in this constitutional provision, the statute trumps Section 155.05 of the Warren Codified Ordinances, despite Warren's home-rule power granted in Section 3, Article XVIII, Ohio Constitution. See also *State ex rel. Mun. Constr. Equip. Operators' Labor Council v. Cleveland,* 114 Ohio St.3d 183, 2007-Ohio-3831, 870 N.E.2d 1174 (the legislative authority under Section 34, Article II, Ohio Constitution to pass laws concerning the general welfare of employees takes precedence over municipal home-rule authority). Therefore, the first issue for our consideration is whether the General Assembly properly exercised its Section 34 power in enacting R.C. 9.481.

{¶ 40} We first note that although the General Assembly declared in the uncodified portion of Senate Bill 82 that it was its intent to enact R.C. 9.481 pursuant to Section 34, Article II, Ohio Constitution, a judicial review is still necessary to determine whether the General Assembly acted within its constitutional authority.

{¶ 41} Because the matter of an employee's residency obviously does not relate to the hours of labor or minimum wage specifically enumerated in Section 34, Article II, Ohio Constitution, the question for our determination is whether an employee's residency is a matter relating to "the comfort, health, safety and general welfare of all employees" and therefore appropriate for legislation as contemplated by Section 34.

{¶ 42} After reviewing the case law authority pertaining to the General Assembly's legislative authority pursuant to Section 34, Article II, Ohio Constitution, we believe the residency question is best considered in the context of the line of cases in which the Supreme Court of Ohio has interpreted this constitutional provision to confer upon the General Assembly broad authority to regulate public employees' right to collectively bargain the terms and conditions of their employment.

{¶ 43} ***Constitutionality of Legislation Governing Collective Bargaining Pursuant to Section 34, Article II, Ohio Constitution***

{¶ 44} On April 1, 1984, the General Assembly enacted the Public Employees' Collective Bargaining Act ("Act"), codified in R.C. Chapter 4117, in order to establish a legal framework for public-sector labor relations. *Local 4501 v. Ohio*

*State Univ.* (1986), 24 Ohio St.3d 191, 195, 24 OBR 420, 494 N.E.2d 1082. The Act established a comprehensive collective bargaining law for Ohio's public employees. *State ex rel. Williams v. Belpre City School Dist. Bd. of Edn.* (1987), 41 Ohio App.3d 1, 6, 534 N.E.2d 96. The Act permits public employers and their employees to negotiate employment terms for the purposes of minimizing the possibility of public-sector disputes and facilitate the determination of the rights and obligations of government employees and employers. *Cincinnati Metro. Hous. v. State Emp. Relations Bd.* (1990), 53 Ohio St.3d 221, 560 N.E.2d 179. The Supreme Court of Ohio, furthermore, has held that the provisions in the Act are constitutionally enacted within the General Assembly's authority to enact "employee welfare legislation" pursuant to Section 34, Article II, Ohio Constitution. *Rocky River v. State Emp. Relations Bd.* (1989), 43 Ohio St.3d 1, 20, 539 N.E.2d 103.

{¶ 45} Since the enactment of the Act, however, the Supreme Court of Ohio has been called upon on several occasions to resolve the potential conflicts between the Act's provisions and the home-rule power enjoyed by municipalities pursuant to Section 3, Article XVIII, Ohio Constitution. The court has determined on these occasions that the legislative authority conferred by Section 34 is broad enough to prevail over the home-rule power in the public-employee collective bargaining context.

{¶ 46} In *Kettering v. State Emp. Relations Bd.* (1986), 26 Ohio St.3d 50, 26 OBR 42, 496 N.E.2d 983, the court upheld the constitutionality of R.C. 4117.01(F)(2), which requires a public employer to bargain collectively with a union representing its police command officers. In his concurring opinion, Justice Douglas explained the historical context of Section 34, Article II enacted at the time of the Home Rule Amendment, as follows:

{¶ 47} "Section 3, Article XVIII of the Ohio Constitution, the so-called Home Rule Amendment, was drafted and recommended for adoption at the Ohio Constitutional Convention of 1912. However, that is not all that was forthcoming from that convention. A number of measures, dealing with the welfare and rights of employees, also emerged. Among those provisions was Section 33, Article II, dealing with mechanics' liens; Section 35, Article II, authorizing a workers' compensation system; Section 37, Article II, providing for an eight-hour day for employees engaged in public works; and Section 41, Article II, setting forth restraints upon the exploitation of prison labor for competitive advantage.

{¶ 48} "Probably the most comprehensive of the provisions was Section 34, Article II, which *manifested the broad purpose of proclaiming and securing to the General Assembly the power to enact legislation establishing employee rights and protections.*" (Emphasis added.) Id. at 57, 26 OBR 42, 496 N.E.2d 983.

{¶ 49} In *Rocky River*, 43 Ohio St.3d 1, 539 N.E.2d 103, the court upheld the constitutionality of R.C. 4117.14(I), a provision in the Public Employees' Collective Bargaining Act mandating binding arbitration between a city and its safety force. The Supreme Court of Ohio held that Chapter 4117, and in particular R.C. 4117.14(I), is constitutional, as it falls within the General Assembly's authority to enact "employee welfare legislation" pursuant to Section 34, Article II, and therefore the home-rule provision may not be interposed to impair, limit, or negate the Act. Id. at 20, 539 N.E.2d 103.

{¶ 50} In that case, appellant Rocky River cited the debates taking place in the 1912 constitutional convention surrounding the enactment of Section 34, Article II to support its argument that the constitutional provision had been intended to apply only to matters involving the minimum wage and similar matters. The Supreme Court of Ohio disagreed with this narrow interpretation of Section 34, explaining:

{¶ 51} "Section 34, as it was ultimately adopted, transcends the limitations urged by appellant. If the framers of our Constitution had intended this section to apply only to minimum wage, almost half of the forty-one words contained in this section must be regarded as mere surplusage, since it further provides that laws may be passed 'fixing and regulating the hours of labor * * * and providing for the comfort, health, safety and general welfare of all employees * * *.'" Id. at 15–16, 539 N.E.2d 103.

{¶ 52} The court in *Rocky River* determined that Section 34, Article II "constitutes a broad grant of authority to the legislature to provide for the welfare of all working persons, including local safety forces. The provision expressly states in 'clear, certain and unambiguous language' that no other provision of the Constitution may impair the legislature's power under Section 34. This prohibition, of course, includes the 'home rule' provision contained in Section 3, Article XVIII." (Citations omitted.) Id. at 13, 539 N.E.2d 103. See also *Am. Assn. of Univ. Professors v. Cent. State Univ.* (1999), 87 Ohio St.3d 55, 61, 717 N.E.2d 286 ("[t]his court has repeatedly interpreted Section 34, Article II as a broad grant of authority to the General Assembly").

{¶ 53} *Kettering* and *Rocky River* both concerned statutes regulating public employees' collective-bargaining rights, which the court determined to be constitutional pursuant to the broad power granted to the General Assembly by Section 34, Article II, Ohio Constitution to enact "employee welfare legislation."

{¶ 54} Given this line of case law, we believe matters that fall within public employees' collective-bargaining rights, such as wages, hours, and other terms and conditions of employment are matters proper for legislation for the purpose of "providing for the general welfare of all employees" pursuant to Section 34, Article II.

{¶ 55} Warren argues that the "employee welfare legislation" authorized by Section 34, Article II can relate only to matters affecting employees' "working environment conditions." The city argues that the ordinance addresses merely "qualifications for appointment" and "where employees reside while not working." This narrow interpretation of the "general welfare" clause in Section 34 is contrary to the Supreme Court of Ohio's mandate in *Rocky River, Kettering,* and *Am. Assn. of Univ. Professors* to broadly construe Section 34 as authorizing the General Assembly to regulate employment matters to provide for the general welfare of employees, in particular those subject to collective bargaining. It is difficult to conceive of a matter more vital to the general welfare of an employee than a freedom to choose the community or neighborhood in which to live.

{¶ 56} In order to qualify for public-sector employment, the worker must either live in or move into the city. Should the need arise to move outside of the city limits to care for an ailing parent in another city, the worker is forced to choose between his family and his job. This Hobson's Choice offered by the city illustrates the incredulities of the city's argument and harkens back to the day of the company town.

{¶ 57} Our view that an employee's residency is a matter relating to terms and conditions of employment subject to collective bargaining is shared by other appellate districts that have had the occasion to consider this question. In *St. Bernard v. State Emp. Relations Bd.* (1991), 74 Ohio App.3d 3, 598 N.E.2d 15, the First Appellate District was confronted with the issue of whether a residency requirement for public employees was "terms or conditions of employment" subject to mandatory collective bargaining.

{¶ 58} In answering the question in the affirmative, the First Appellate District provided the following well-reasoned analysis, citing Ohio's collective-bargaining statutes:

{¶ 59} "Mandatory subjects of collective bargaining are deemed to be matters of immediate concern that vitally affect the terms and conditions of employment of the bargaining-unit employees. *Allied Chem. & Alkali Workers of Am. v. Pittsburgh Plate Glass Co.* (1971), 404 U.S. 157, 179–180 [92 S.Ct. 383, 30 L.Ed.2d 341]. R.C. 4117.08(A) provides that the following are subjects of mandatory bargaining:

{¶ 60} " 'All matters pertaining to wages, hours, or terms and other conditions of employment and the continuation, modification, or deletion of an existing provision of a collective bargaining agreement are subject to collective bargaining between the public employer and the exclusive representative, except as otherwise specified.'

{¶ 61} "As further required by R.C. 4117.08(C), public employers must also bargain in areas that are subjects of management rights and direction of the governmental unit if they 'affect wages, hours, terms and conditions of employment * * *.' *Lorain City Bd. of Edn. v. State Emp. Rel. Bd.* (1988), 40 Ohio St.3d 257, 262 [533 N.E.2d 264]. Therefore, a public employer's decision to exercise a management right which affects the terms and conditions of the unit's employment becomes a mandatory subject for bargaining. *Lorain City Bd. of Edn.* [at 262, 533 N.E.2d 264]." *St. Bernard,* 74 Ohio App.3d at 5–6, 598 N.E.2d 15.

{¶ 62} The court in *St. Bernard* went on to note that "[h]ad [the General Assembly] intended to exclude residency requirements as a subject of collective bargaining, the legislature would have specifically included residency in R.C. 4117.08(B) or (C). * * * [T]he value of bargaining the residency issue is like any of the other 'terms and conditions of employment,' within the Ohio Supreme Court's observation in *Lorain City Bd. of Edn.* [at 269, 533 N.E.2d 264]." *St. Bernard,* 74 Ohio App.3d at 6–7, 598 N.E.2d 15.

{¶ 63} This view is also adopted by the Sixth Appellate District, in *Santiago v. Toledo* (Feb. 13, 1998), 6th Dist. No. L–97–1219, 1998 WL 78788 ("R.C. 4117.08(A) mandates that matters related to 'wages, hours, or terms and other conditions of employment' are subject to collective bargaining. Residency requirements are a 'condition of employment' and are, therefore, subject to collective bargaining").

{¶ 64} We agree with these appellate districts and likewise view an employee's residency as a matter within the "terms or conditions of employment" subject to collective bargaining. Residency requirements such as Section 155.05 of the Warren Codified Ordinances undercut public employees' right to collectively bargain all of the terms and conditions of their employment, and therefore, the General Assembly's prohibition of municipalities' impairing of the employees' rights to bargain is a proper exercise of its authority derived from Section 34, Article II, Ohio Constitution.

{¶ 65} Accordingly, we uphold the trial court's determination that R.C. 9.481 was constitutionally enacted. In accordance with the Supremacy Clause in Section 34, therefore, R.C. 9.481 prevails over Section 155.05 of the Warren Codified Ordinances.

{¶ 66} Warren's first assignment of error is overruled.

{¶ 67} *The Home Rule Analysis*

{¶ 68} In Warren's second assignment of error, it asserts that Section 155.05 is an exercise of its home-rule power pursuant to Section 3, Article XVIII, Ohio Constitution, and therefore it supersedes R.C. 9.481.

{¶ 69} Because of the supremacy clause in Section 34, our determination that R.C. 9.481 is constitutionally enacted pursuant to that section renders unneces-

sary a "home-rule analysis" traditionally undertaken by the courts to resolve a potential conflict between a statute and a municipal ordinance enacted pursuant to its home-rule power. However, we will address Warren's second assignment of error and examine R.C. 9.481 under the "home-rule analysis" as well.

{¶ 70} Section 3, Article XVIII, Ohio Constitution, provides that municipalities "shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." Under a "home-rule analysis," the threshold question is " 'whether the matter in question involves an exercise of local selfgovernment or an exercise of local police power.' " *Am. Fin. Servs. Assn. v. Cleveland,* 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776, ¶ 23.

{¶ 71} If a local ordinance is purported to be an exercise of a municipality's police power, the ordinance is subject to the "general law" test, adopted by the Supreme Court of Ohio in *Canton v. Ohio,* 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, which states:

{¶ 72} "A state statute takes precedence over a local ordinance when (1) the ordinance is in conflict with the statute, (2) the ordinance is an exercise of the police power, rather than of local self-government, and (3) the statute is a general law." Id. at 151, 766 N.E.2d 963.

{¶ 73} If, on the other hand, an ordinance is purported to be an exercise of the power of local self-government, the Supreme Court of Ohio has applied the "statewide concern doctrine" when the exercise of that power conflicts with a state statute.

{¶ 74} In this case, Warren asserts that it enacted Section 155.05 pursuant to its power of local self-government; therefore, we review the ordinance under the statewide concern doctrine, rather than applying the "general law" test adopted in Canton.

{¶ 75} The court explained the doctrine of statewide concern as follows:

{¶ 76} "[T]he cities' power of local self-government are not completely unfettered. This court has previously acknowledged that, in matters of statewide concern, municipal powers of local self-government may be subordinate to the exercise of the state's police powers." *Kettering,* 26 Ohio St.3d at 53, 26 OBR 42, 496 N.E.2d 983.

{¶ 77} The court in *Kettering* reiterated its holding in *Cleveland Elec. Illum. Co. v. Painesville* (1968), 15 Ohio St.2d 125, 129, 44 O.O.2d 121, 239 N.E.2d 75 that "[t]he power granted under Section 3 of Article XVIII relates to local

matters and even in the regulation of such local matters a municipality may not infringe on matters of general and statewide concern." Id.

{¶ 78} See also *Reading v. Pub. Util. Comm.*, 109 Ohio St.3d 193, 2006-Ohio-2181, 846 N.E.2d 840, ¶ 32–33 (this court has never held that powers of local self-government under Section 3 are unlimited; it is a fundamental principle of Ohio law that, pursuant to the "statewide concern" doctrine, a municipality may not, in the regulation of local matters, infringe on matters of general and statewide concern). *Am. Fin. Servs. Assn.*, 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776, at ¶ 27 and 29 (where matters of statewide concern are at issue, the state retains the power—despite the Home Rule Amendment—to address those matters; the courts must decide as a preliminary matter whether a particular issue is not a matter of merely local concern, but is of statewide concern, and therefore not included within the power of local self-government).

{¶ 79} The test to distinguish matters of local self-government from matters of statewide concern was first set forth in *Beachwood v. Cuyahoga Cty. Bd. of Elections* (1958), 167 Ohio St. 369, 5 O.O.2d 6, 148 N.E.2d 921:

{¶ 80} "To determine whether legislation is such as falls within the area of local self-government, the result of such legislation or the result of the proceedings thereunder must be considered. If the result affects only the municipality itself, with no extraterritorial effects, the subject is clearly within the power of local self-government and is a matter for the determination of the municipality. However, if the result is not so confined it becomes a matter for the General Assembly." Id. at 371, 5 O.O.2d 6, 148 N.E.2d 921.

{¶ 81} "Thus, even if there is a matter of local concern involved, if the regulation of the subject matter affects the general public of the state as a whole more than it does the local inhabitants the matter passes from what was a matter for local government to a matter of general state interest." *Cleveland Elec. Illum. Co.*, 15 Ohio St.2d at 129, 44 O.O.2d 121, 239 N.E.2d 75.

{¶ 82} As the court observed in *Cleveland Elec. Illum. Co.*, "[d]ue to our changing society, many things which were once considered a matter of purely local concern and subject strictly to local regulation, if any, have now become a matter of statewide concern, creating the necessity for statewide control." Id., quoting *State ex rel. McElroy v. Akron* (1962), 173 Ohio St. 189, 192, 19 O.O.2d 3, 181 N.E.2d 26.

{¶ 83} Here, we are aided by case law in which the court applied the statewide-concern doctrine to permit state laws regulating matters relating to terms and conditions of public-sector employment. For example, in *State ex rel. Evans v. Moore* (1982), 69 Ohio St.2d, 88, 23 O.O.3d 145, 431 N.E.2d 311, the Supreme Court of Ohio applied this doctrine to hold that the prevailing-wage law supersed-

ed local wage regulation. In *State ex rel. Villari v. Bedford Hts.* (1984), 11 Ohio St.3d 222, 11 OBR 537, 465 N.E.2d 64, overruled on other grounds, the court similarly upheld a state law governing the calculation of employee benefits. In *State ex rel. Adkins v. Sobb* (1986), 26 Ohio St.3d 46, 26 OBR 39, 496 N.E.2d 994, the court validated a state law calculating vacation-leave credits. This line of cases establishes that matters relating to terms and conditions of public-sector labor relations are matters of statewide concern appropriate for statewide control by the General Assembly.

{¶ 84} The residency requirement likewise relates to terms and conditions of employment and therefore is a matter more appropriate for uniform statewide legislation rather than patchwork regulations by hundreds of municipalities. As to potential extraterritorial effects, a residency requirement such as Warren's affects not only the municipality itself, but clearly has impact beyond its borders. The requirement impairs competition among the municipalities for residents; it affects the tax revenue, housing market, and school systems of all surrounding communities.

{¶ 85} Therefore, in our view, a residency requirement is not purely local in nature; it goes beyond the administration of internal local affairs of a municipality. It is therefore more appropriate for statewide control by the legislature pursuant to the doctrine of statewide concern. Accordingly, Section 155.05 must yield to R.C. 9.481.

{¶ 86} Warren's second assignment of error is without merit.

{¶ 87} In its third and fourth assignments of error, Warren contends that R.C. 9.481 violates the Uniformity Clause and the Contract Clause of the Ohio Constitution, respectively. Because of the supremacy clause in Section 34, Article II, Ohio Constitution and our determination that R.C. 9.481 is a proper exercise of the Legislature's Section 34 power, these assignments of error are moot. However, we undertake the following analysis to express our view that R.C. 9.481 offends neither constitutional clause.

{¶ 88} *The Uniformity Clause*

{¶ 89} In its third assignment of error, Warren claims that R.C. 9.481 violates the Uniformity Clause in Sec. 26, Article II, Ohio Constitution. That provision states: "All laws, of a general nature, shall have a uniform operation throughout the state * * *." The constitutionality of such legislation is determined through a two-part analysis: (1) whether the statute is a law of a general or special nature and (2) whether the statute operates uniformly throughout the state. (Citations omitted.) *Desenco, Inc. v. Akron* (1999), 84 Ohio St.3d 535, 541, 706 N.E.2d 323.

{¶ 90} A statute's subject matter is "general" in compliance with the Uniformity Clause "if the subject does or may exist in, and affect the people of, every county, in the state." *Desenco* at 542, 706 N.E.2d 323, quoting *Hixson v. Burson* (1896), 54 Ohio St. 470, 481, 43 N.E. 1000.

{¶ 91} Here, Warren does not challenge the general nature of R.C. 9.481, but argues only that it lacks uniform operation, on the ground that it is applicable only to full-time employees but not to other categories of employees such as part-time employees or volunteers. Warren argues that this distinction is arbitrary and illogical.

{¶ 92} The court in *State ex rel. Stanton v. Powell* (1924), 109 Ohio St. 383, 142 N.E. 401, set forth the test for the uniform operation of a statute as follows:

{¶ 93} "Section 26, Art. II of the Constitution, was not intended to render invalid every law which does not operate upon all persons, property or political subdivisions within the state. It is sufficient if a law operates upon every person included within its operative provisions, provided such operative provisions are not arbitrarily and unnecessarily restricted. And the law is equally valid if it contains provisions which permit it to operate upon every locality where certain specified conditions prevail. A law operates as an unreasonable classification where it seeks to create artificial distinctions where no real distinction exists." Id. at 385, 142 N.E. 401.

{¶ 94} In *Beachwood*, the court further explained:

{¶ 95} "This court has held many times that, to comply with this section, legislation need not affect every person in the state but that a reasonable classification may be made, and it is sufficient if the legislation operates equally upon every person and locality within such classification." Id. at 372, 148 N.E.2d 921.

{¶ 96} In this connection, R.C. 9.481 states:

{¶ 97} "(A) As used in this section:

{¶ 98} " * * *.

{¶ 99} "(2) 'Volunteer' means a person who is not paid for service or who is employed on less than a permanent full-time basis.

{¶ 100} "(B)(1) Except as otherwise provided in division (B)(2) of this section, no political subdivision shall require any of its employees, as a condition of employment, to reside in any specific area of the state."

{¶ 101} Thus, "every person included within [the] operative provisions" for the purpose of Uniformity Clause is all employees of political subdivision in the state employed on less than a permanent full-time basis. The issue is therefore whether the provision is "arbitrarily and unnecessarily restricted" or whether a

reasonable classification was made by applying only to permanent full-time employees.

{¶ 102} It is axiomatic that full-time permanent employees enjoy more rights, privileges, and protections in law than part-time or temporary employees. Therefore, in our view, the legislature's protection of public employees' right to reside wherever they wish is reasonably extended only to full-time permanent public employees. The distinction between full-time permanent employees and less than full-time permanent employees is not arbitrary or unnecessarily restricted in the instant employee welfare legislation.

{¶ 103} Warren's third assignment of error is not well taken.

{¶ 104} *The Contract Clause*

{¶ 105} In its fourth assignment of error, Warren asserts that R.C. 9.481 violates Section 28, Article II, Ohio Constitution. That constitutional provision states:

{¶ 106} "The general assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts * * *."

{¶ 107} In particular, Warren asserts that the General Assembly cannot pass a law that would limit the city of Warren's right to contract with its employees.

{¶ 108} Section 28, Article II, of the Ohio Constitution prohibits laws impairing *existing* contractual obligations. See, e.g., *State ex rel. Youngstown v. Jones* (1939), 136 Ohio St. 130, 136, 16 O.O. 73, 24 N.E.2d 442 (the General Assembly had power to enact an amended section and repeal the prior law, but in doing so could not interfere with vested rights or impair the obligations of existing contracts in violation of Section 28, Article II of the state constitution); *Goodale v. Fennell* (1875), 27 Ohio St. 426, 432, 1875 WL 189 (when the contract is once made, the law then in force defines the duties and rights of the parties under it. Any change that impairs the rights of either party, or amounts to a denial or obstruction of the rights accruing by a contract, is obnoxious to [Section 28, Article II of the Ohio Constitution]). Warren is misguided in relying on this constitutional provision as it asserts that the General Assembly cannot pass a law limiting the city's right enter into a contract with its employees.

{¶ 109} Furthermore, "[th]e provision[ ] against impairment of contracts * * * must bow to valid police power legislation designed to protect public health, safety and welfare as long as the exercise of that police power 'bears a real and substantial relation to the public health, safety, morals or general welfare of the public and if it is not unreasonable or arbitrary.' Moreover, * * * the courts * * * will not invalidate that legislation unless the legislating body's initial determination that the law bears a real and substantial relationship to public

health, safety and welfare appears to be clearly erroneous." (Citations omitted.) *Ohio Edison Co. v. Power Siting Comm.* (1978), 56 Ohio St.2d 212, 218, 10 O.O.3d 371, 383 N.E.2d 588. See also *Middletown v. Ferguson* (1986), 25 Ohio St.3d 71, 77, 25 OBR 125, 495 N.E.2d 380.

{¶ 110} Here, the General Assembly declared in the uncodified section of Senate Bill 82 that "it is a matter of statewide concern to generally allow the employees of Ohio's political subdivisions to choose where to live, and that it is necessary to generally prohibit political subdivisions from requiring their employees, as a condition of employment, to reside in any specific area of the state in order to provide for the comfort, health, safety, and general welfare of those public employees." This declaration evinces the legislating body's initial determination that the law bears a real and substantial relationship to public health, safety, and welfare.

{¶ 111} A residency requirement places an onerous burden on the lives of public employees and their families, as it severely limits their choice of housing, schools, medical services, or places of worship, undoubtedly affecting their "health, safety, morals or general welfare." We cannot say that the legislature's affording the state's public employees the ability to choose where to live is unreasonable or arbitrary.

{¶ 112} Therefore, we do not find the legislature's determination that R.C. 9.481 bears a real and substantial relationship to public health, safety, and welfare to be "clearly erroneous."

{¶ 113} Moreover, as we discussed in our earlier analysis, a residency requirement is a mandatory subject of collective bargaining. The residency ordinance undercuts the right to collectively bargain all of the terms and conditions of public-sector employment and thus actually impairs the right to contract by imposing a condition of employment rather than allowing the parties to negotiate the condition as part of the collective-bargaining agreement. Simply put, R.C. 9.481 does not impair contractual rights; it ensures a level playing field when public-sector employees negotiate a collective-bargaining agreement with a political subdivision.

{¶ 114} Warren's fourth assignment of error is not well taken.

{¶ 115} As Justice Blackmun wrote in his dissent in *United Bldg. & Constr. Trades Council of Camden Cty. & Vicinity v. Mayor & Council of Camden* (1984), 465 U.S. 208, 104 S.Ct. 1020, 79 L.Ed.2d 249, "[Our] view of the constitutional question in this case does not depend on [our] personal opinion about the desirability of the course on which [the city] has embarked. [We] do not find 'beggar thy neighbor' economic policies any more attractive when practiced by [cities], States or nations. The unedifying sight of localities fighting

for parochial gain at one another's expense gives new urgency to Benjamin Franklin's reputed warning that 'we must * * * all hang together, or most assuredly we shall all hang separately.' R. Clark, Benjamin Franklin (1983) 286. At the risk of restating the obvious, however, the issue before us is not the desirability of the ordinance, but its constitutionality * * *." Id. at 234, 104 S.Ct. 1020, 79 L.Ed.2d 249 (Blackmun, J., dissenting).

{¶ 116} The judgment of Trumbull County Common Pleas Court is affirmed.

Judgment affirmed.

CANNON, J., concurs.

RICE, J., concurs in judgment only.

TIMOTHY P. CANNON, Judge, concurring.

{¶ 117} The instant appeal presents a question of interpretation of the Ohio Constitution. Neither the state legislature nor any political subdivision may pass legislation that is contrary to the Ohio Constitution. Section 34, Article II contains a specific provision authorizing laws that regulate the hours of labor and establish a minimum wage. In addition, Section 34, Article II contains a more general provision, which authorizes the passing of laws that provide "for the comfort, health, safety and general welfare of all employees." The last clause of Section 34, Article II, which is critical in the instant case, states, "no other provision of the constitution shall impair or limit this power."

{¶ 118} Appellants contend that R.C. 9.481, which became effective on May 1, 2006, is a statute that is specifically authorized by Section 34, Article II, and cannot be limited or impaired by any other section of the Ohio Constitution. Warren's residency requirement, Section 155.05 of Warren's Codified Ordinances, passed by the Council of the City of Warren on May 29, 1991, is clearly in conflict with R.C. 9.481. Warren believes that Section 155.05 is a valid exercise under, and permitted by, Section 3, Article XVIII of the Ohio Constitution—"the Home Rule Amendment." Essentially, Warren argues that the restrictions contained in R.C. 9.481 exceed the scope of Section 34, Article II, because they do not provide for the "comfort, health, safety and general welfare" of employees while they are physically present for work; therefore, the prohibition on any other constitutional limitation does not apply.

{¶ 119} In interpreting the Ohio constitutional provision applicable to this issue, certain rules of construction apply. " 'The first step in determining the meaning of a constitutional provision is to look at the language of the provision itself. * * * Words used in the Constitution that are not defined therein must be taken in their usual, normal, or customary meaning.' * * * " (Citations omitted.) *State ex rel. King v. Summit Cty. Council*, 99 Ohio St.3d 172, 2003-Ohio-3050, 789

N.E.2d 1108, at ¶ 35. "If the meaning of a provision cannot be ascertained by its plain language, a court may look to the purpose of the [constitutional] provision to determine its meaning." *State v. Jackson,* 102 Ohio St.3d 380, 2004-Ohio-3206, 811 N.E.2d 68, at ¶ 14.

{¶ 120} Warren, together with the Third, Sixth, Eighth, and Ninth Appellate Districts, has suggested that this constitutional provision should be read to limit the phrase "comfort, health, safety, and general welfare" to only those circumstances in which the employee is physically present for work. See *Lima v. State,* 177 Ohio App.3d 744, 2007-Ohio-6419, 896 N.E.2d 149; *Toledo v. State,* 6th Dist. No. L–07–1261, 2008-Ohio-1957, 2008 WL 1837256; *Cleveland v. State,* 8th Dist. Nos. 89486 and 89565, 2008-Ohio-2655, 2008 WL 2252542; *State v. Akron,* 9th Dist. No. 23660, 2008-Ohio-38, 2008 WL 81506. However, as recognized by the Supreme Court of Ohio, "[t]he language of Section 34 is so clear and unequivocal that resort to secondary sources, such as the constitutional debates, is actually unnecessary." *Rocky River v. State Emp. Relations Bd.* (1989), 43 Ohio St.3d 1, 15, 539 N.E.2d 103. The plain language of Section 34, Article II clearly grants the General Assembly broad authority to legislate for the "comfort, health, safety, and *general welfare of all employees.*" (Emphasis added.) If this section were intended to apply only to the period of time when one is physically present at work, it could have been simply stated as such by providing for the "comfort, health, safety, and general welfare of all employees *during working hours.*"

{¶ 121} I agree with the writing judge that the Supreme Court of Ohio has interpreted this constitutional provision as encompassing more than just the time period when one is at work. See generally *Rocky River v. State Emp. Relations Bd.* (1989), 43 Ohio St.3d 1, 13, 539 N.E.2d 103. We are bound to follow the precedent as set forth by the Supreme Court of Ohio in *Rocky River,* which determined that Section 34, Article II "constitutes a broad grant of authority to the legislature to provide for the welfare of all working persons, including local safety forces. * * * The provision expressly states in 'clear, certain and unambiguous language' that *no other provision* of the Constitution may impair the legislature's power under Section 34. * * * This prohibition, of course, includes the 'home rule' provision contained in Section 3, Article XVIII. * * *." (Citations omitted and emphasis sic.) Id.

{¶ 122} In the area of labor law, where a collective-bargaining agreement is in place, any change in terms and conditions of employment must be bargained. Warren argues that Section 155.05 is a "qualification" for employment and, thus, is outside the scope of Section 34, Article II. However, Section 155.05 is clearly a term and condition of employment; an employee's residence within the city is required to be eligible for continued employment.

{¶ 123} Perhaps the most disturbing aspect of the ordinance in question is the lack of any exception to the residency requirements for particular circumstances. Living within the city limits affects all facets of an employee's life, including where the employee's children attend school, what local government services he will be able to obtain, what type of safety forces he will have, and where his spouse must live, regardless of how far away the spouse may work. If an employee wanted to live in a rural setting with acreage, the residency requirement would limit that ability. Likewise, a residency requirement also affects an employee when a change of circumstances occurs, such as a transfer of a spouse to a location where it is impractical to continue to work in the area or when a child's special needs cannot be accommodated by the educational services available within the city. Clearly, this ordinance has an influence on an employee not just while he or she is "on the clock." The ordinance has the clear effect of impacting the "comfort, health, safety, and general welfare of all employees." It certainly requires much less interpretation to find that these considerations are within the purview of Section 34, Article II, rather than to suggest that it applies only while the employee is physically "at work."

{¶ 124} Based on the foregoing, I would concur that R.C. 9.481 is a valid legislative enactment contemplated by Section 34, Article II of the Ohio Constitution, because it clearly affects the "comfort, health, safety, and general welfare of all employees." This is supported by our rules of construction and the precedent of *Rocky River*, 43 Ohio St.3d 1, 539 N.E.2d 103.

CYNTHIA WESCOTT RICE, J., concurring.

{¶ 125} While I agree with the writing judge's resolution of the case, I do not believe R.C. 9.481 necessarily conflicts with home-rule ordinances that make residency a precondition of employment. Rather, such a pre-employment criterion affects the interests of *prospective* employees. In order to clarify my position, I write separately.

{¶ 126} While Section 155.05 of the Warren Codified Ordinances affects all employees hired subsequent to its enactment, it has a built-in "grandfather clause" for those employees who did not reside in the city prior to its enactment. However, until prospective employees become actual employees, they will be unaffected by the ordinance. By becoming employees, individuals will have voluntarily agreed to the pre-employment condition of their specific job. Individuals have the freedom to choose where to live. Likewise, in making an employment decision, they may waive this option in order to obtain employment with a municipality that has a residency requirement.

{¶ 127} The unions assert that R.C. 9.481 represents a proper exercise of the General Assembly's authority under Section 34, Article II of the Ohio Constitu-

tion. They further argue that Section 155.05 directly conflicts with the statute and is rendered invalid by virtue of the Supremacy Clause of the Ohio Constitution. I agree that R.C. 9.481 is a valid legislative enactment. Moreover, I agree with the unions' argument as it pertains to the ordinance at issue. However, I believe that the unions' position is persuasive only to the extent that the ordinance fails to provide an exception to the residency requirement for unpredictable changes in circumstances, emergencies, and hardships that might require the employee to move from the city yet nevertheless keep his or her job, e.g., an ailing parent or a spouse's change in employment.

{¶ 128} Because Section 155.05 does not have such an exception or create a process by which an employee could be exempted from the residency requirement, it makes residency in Warren a fundamental condition of actual employment. In this regard, R.C. 9.481 is valid and must necessarily supersede Section 155.05.

{¶ 129} However, I do not think that home-rule ordinances that incorporate residency requirements will always conflict with R.C. 9.481. For instance, where a political subdivision enacts an ordinance that makes residency a precondition of employment, such a condition affects only potential employees. Potential employees are nonemployees, nonunion members, and, by implication, have no cognizable collective-bargaining rights. R.C. 9.481 has no application to potential employees or scenarios in which actual employees are unaffected. Thus, home-rule ordinances that impact the welfare of nonemployees are in no conflict with the mandates of R.C. 9.481.

{¶ 130} If Section 155.05 were rewritten to include an exception, it is unclear how the Unions can assert that the ordinance runs afoul of R.C. 9.481 when the only individuals it would actually affect are nonemployees who find the provision unnecessarily burdensome. Because nonemployees will suffer no concrete injury by operation of Section 155.05, they have no personal stake in the controversy. For a party to have standing, he, she, or it must have a personal stake in the outcome of the controversy, a concrete injury that will be resolved by the court, not a mere hypothetical or conjectural matter. See *Bourke v. Carnahan*, 163 Ohio App.3d 818, 2005-Ohio-5422, 840 N.E.2d 1101, at ¶ 10; see also *Middletown v. Ferguson* (1986), 25 Ohio St.3d 71, 75, 25 OBR 125, 495 N.E.2d 380. In this regard, the unions have no standing to assert their argument insofar as it is directed at the burdens the ordinance places upon those who have yet to accept employment.

{¶ 131} With this in mind, if the exception discussed above were built into Section 155.05, I do not think it would stand in conflict with R.C. 9.481. I believe Section 155.05 incorporates a valid pre-employment condition that prospective employees must agree to before being hired. By entering into this pre-employ-

ment condition, they waive their right to collectively-bargain the issue. However, because the ordinance does not provide a limited exception for emergencies that might require an employee to suddenly or even temporarily change residences, it also requires its new hires to reside in Warren irrespective of the potential changes in their personal circumstances. Hence, as it is written, I agree that the ordinance conflicts with R.C. 9.481.

{¶ 132} To summarize, it is foreseeable that nonelected public employees who have accepted the pre-employment residency condition may encounter changes in their lives necessitating a relocation of their residence. However, the inability to relocate outside the municipality could have a negative impact on these employees and affect their general welfare. With no exception to accommodate for these changes, I believe Section 155.05 requires employees, as a condition of their employment, to reside in Warren. This is an employment condition that, due to its inflexibility, directly violates R.C. 9.481. I consequently concur with the conclusion that the ordinance must yield to R.C. 9.481, a law deriving its validity from the proper exercise of the General Assembly's authority under Section 34, Article II of the Ohio Constitution.